**Martin G. WEITZEL, Sr., Appellant,**

v.

**Gerald PORTNEY, Director, Internal Revenue Service, Baltimore District, Appellee.**

**No. 76–1107.**

United States Court of Appeals, Fourth Circuit.

Submitted Oct. 1, 1976.

Decided Jan. 19, 1977.

Martin G. Weitzel, appellant pro se.

Daniel M. Clements, Asst. U.S. Atty., Baltimore, Md., for appellee.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

PER CURIAM:

Appellant Martin G. Weitzel, Sr., an employee of the Internal Revenue Service brought this suit to redress his failure to obtain a promotion to which he felt himself entitled. Weitzel alleges that the selection process was tainted by sex discrimination and by a failure of the Internal Revenue Service to abide by its own regulations and the Union contract between it an the National Association of Internal Revenue Employees, (NAIRE). The government moved for summary judgment, and the District Court granted the motion. No hearing was held on the allegation of sexual bias because the District Judge followed the rule announced in *Hackley v. Johnson*, 360 F.Supp. 1247 (D.D.C. 1973), *rev'd sub nom Hackley v. Roudebush*, 171 U.S.App.D.C. 376, 520 F.2d 108 (1975), that a *de novo*

hearing is not always required in employment discrimination actions brought against the federal government. As to the claim that I.R.S. failed to follow applicable regulations and that it breached the union contract, the District Court held that the suit was barred by Weitzel's failure to exhaust administrative remedies or to resort to the union grievance procedure.

I

██ While an appeal was pending in this Court from the decision of the District Court, the Supreme Court decided *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). In *Chandler*, the Court held federal employees do have a statutory right to a *de novo* hearing under 42 U.S.C. § 2000e–16(c). Since the District Court did not grant such a hearing because it believed it not to be required, and instead used the "substantial evidence" standard applicable to a review of agency determinations, its judgment must be reversed and remanded for further proceedings on this part of Weitzel's claim. While Weitzel's chances of success may be small, he is still entitled to a hearing. There is in the record some evidence of sex discrimination—specifically that certain tasks in the office where Weitzel worked were segregated by sex, and that certain discrepancies existed in the numerical ratings assigned to Weitzel and the successful female candidate based on apparently equivalent performance evaluations. Of course, we do not express any view of the merits of Weitzel's claim.

II

A—Facts

██ Weitzel also claims that his failure to receive the promotion is attributable to the IRS' failure to follow its own regulations and abide by its contract with the union, (NAIRE). The District Court refused to consider these claims because Weitzel failed to exhaust available non-judicial remedies. Since the applicability of the doctrine of "exhaustion of remedies" depends on the specific circumstances of a given case, *McKart v. United States*, 395 U.S. 185, 194–95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) it is necessary to sketch out the factual circumstances presented by the instant case.

Weitzel was a GS–5 employee at the Baltimore Regional Office of the I.R.S. who had previously been a GS–9, but who had been demoted in 1962 as an alternative to dismissal during a "reduction-in-force." In 1973, there was a vacancy in the GS–7–9 range for which Weitzel and several other I.R.S. employees applied. No examination was held. The applicants were to be given numerical scores, weighted to reflect the requirements of the vacant position, based on supervisor evaluations and an interview. Apparently in violation of the contract Weitzel was not evaluated solely by his immediate superior. His immediate superior, was aided in filling out the evaluation by Thomas Kennedy, Chief of the Facilities Management Branch, Baltimore District.[1] Apparently there was personal animosity of long-standing between Kennedy and Weitzel. Kennedy was responsible for converting the supervisor evaluations into numerical ratings.

The highest ranking applicant, a male who scored a 204, declined the position and it was offered to a woman,[2] a Mrs. Kathryn Osborn who scored the second highest rating, a 188. Another female applicant scored 186, and Weitzel and several women

---

1. Mr. Kennedy testified that he was unaware of the provision of the contract. At the hearing, the government's attorney objected to the introduction of testimony concerning violations of the contract, since the union was free to file a grievance or unfair labor practice charge concerning the violation. Although Weitzel's lawyer was Assistant Counsel of the National Treasury Employees Union, this suggestion was never taken up.

2. Due to personnel changes, a different promotion board recommended that Osborn be given the promotion. For this reason, the hearing examiner found that the original selection of a male was rendered irrelevant in determining whether there was sexual bias in the second choice.

candidates were rated at 182. The testimony at the hearing revealed that Kennedy was unable to explain why certain ratings of Weitzel's were lower than Osborn's even though his underlying evaluations were equal or better than hers. No consideration was given to Weitzel's prior demotion although such persons were required to be given preference over all other applicants, because he had failed to notify the promotion board of this fact, as required by I.R.S. regulations.[3]

Weitzel filed an informal complaint of sex discrimination with the I.R.S. When no satisfactory resolution was worked out, a formal complaint was filed. An investigation was conducted and Mr. Weitzel was shown a copy of the preliminary report. He responded with a series of allegations concerning procedural irregularities, and the equal employment opportunity investigator investigated these to determine if any of them were motivated by a discriminatory purpose. The I.R.S. advised Weitzel that its proposed disposition was a finding of no discrimination. He requested and received a hearing at which he was represented by counsel. The hearing officer found that there was no sex discrimination involved in the denial of the promotion. He did recommend that the selection be reprocessed because of procedural irregularities.[4] The I.R.S. accepted the former recommendation, but rejected the latter. A further appeal was noted to the Civil Service Appeal Review Board, but only as to the sex discrimination complaint.[5] The Appeals Review Board affirmed the finding of no discrimination.

■ We agree with the District court that the failure to exhaust remedies is a bar to the maintenance of this suit. No reasons appear excusing the failure to exhaust remedies which existed and were readily available, cf. 5 C.F.R. § 771.311 and § 300.104(b) (1974). Both the hearing examiner and the Appeal Review Board expressed doubts about the propriety of the procedures used by the I.R.S. in processing this promotion. Had the issue been squarely presented to the appropriate authorities who have greater expertise and authority in the area of federal employee promotions than do the courts, Weitzel might well have received the relief he sought. Cf. Parisi v. Davidson, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). Application of the exhaustion doctrine here is not so harsh as to be inequitable.

■ We think that the same result must be reached in respect to the grievance procedure contained in the union contract. The validity of NAIRE contract with the I.R.S. depends on Executive Order 11491, 5 U.S.C. § 7301 (Supp. 1976). Section 13 of that order provides for the establishment of grievance procedures and the I.R.S.—NAIRE contract contained such a provision. The rights that Weitzel had under the contract could be no greater than those existing under Executive Order 11491. The relative portion of the Executive Order, at the time this suit was brought, read:

"SEC. 13. Grievance and arbitration procedures.

"(a) An agreement between an agency and a labor organization shall provide a procedure, applicable only to the unit, for the consideration of grievances over the interpretation or application of the agreement. A negotiated grievance procedure may not cover any other matters, includ-

---

3. The hearing examiner found that this rule conflicted with Civil Service Commission Regulations which place the responsibility for administering this rule on the agency.

4. This recommendation was dropped from the copy of the report submitted by the agency to the Civil Service Commission's Appeal Review Board. David Sawyer, Director of the Treasury Department's Equal Opportunity Office explained that this was done in accordance with 5 C.F.R. 713.218(g) (1974) which required

that recommendations not relating to fair employment practices be transmitted separately. Weitzel did not receive a copy of the "unexpurgated" decision and recommendation of the hearing officer until *after* the Appeal Review Board decided his appeal.

5. The notice of appeal read "I hereby appeal the decision of the Department of the Treasury Office of Equal Opportunity in denial of my complaint of Sex Discrimination."

ing matters for which statutory appeals procedures exist, and shall be the exclusive procedure available to the parties and the employees in the unit for resolving such grievances. However, any employee or group of employees in the unit may present such grievances to the agency and have them adjusted, without the intervention of the exclusive representative, as long as the adjustment is not inconsistent with the terms of the agreement and the exclusive representative has been given opportunity to be present at the adjustment.

"(b) A negotiated procedure may provide for the arbitration of grievances over the interpretation of application of the agreement, but not over any other matters. Arbitration may be invoked only by the agency or the exclusive representative. Either party may file exceptions to an arbitrator's award with the Council, under regulations prescribed by the Council.

"(c) Grievances initiated by an employee or group of employees in the unit on matters other than the interpretation or application of an existing agreement may be presented under any procedure available for the purpose." [6]

Exhaustion of this procedure is therefore a necessity before any judicial review could be sought. *Montana Chapter of Ass'n of Civ. Tech., Inc. v. Young,* 514 F.2d 1165 (9th Cir. 1975). *Local 1498, Amer. Fed. of Government Employees v. Am. Fed. of Government Employees,* 552 F.2d 486 (3d Cir. 1975). In this case's present posture, we need not decide whether review could be had under the Administrative Procedures Act, 5 U.S.C. § 101 *et seq.* had Weitzel exhausted his administrative remedies. *Compare Local 1498, supra* with *Montana Chapter, supra. See generally National Broiler Council, Inc. v. Fed. Labor Relations Council,* 382 F.Supp. 322 (E.D.Va. 1974). Requiring federal employees to exhaust an established grievance procedure does no more than place public employees on par with private employees, who are ordinarily required to exhaust contractual grievance procedures before bringing a lawsuit to enforce a union-management agreement. *Republic Steel v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Since Executive Order 11491 is modelled after existing federal labor law, we think that the considerations which led the Supreme Court in *Republic Steel* to impose an exhaustion requirement in private labor disputes are applicable to dispute in the public sector. *Cf. Malone v. United States Postal Service,* 526 F.2d 1099 (6th Cir. 1975).

Because we hold that under either Civil Service Regulations or the contract, exhaustion was required, we need not decide whether the contractual grievance procedure was the exclusive remedy available to Weitzel as § 13(a) seems to imply.

### C

■ Weitzel alleges that certain remarks of the government's attorney during closing argument at the administrative hearing deprived him of a fair hearing and thereby denied him due process. The District Court found these remarks to be harmless error, and, without passing on the propriety of these remarks, we find that the District Court's ruling is not clearly erroneous. The judgment of that court is accordingly affirmed on this aspect of the case.

### III

To sum up, we remand the case to the District Court so that it may hold a *de novo* hearing on the issue of sex discrimination. The judgment of the District Court on the issue of the procedural irregularities is affirmed, as is that court's rulings on the due process claim. At the hearing, Weitzel will on course be free to introduce the procedural irregularities as proof of sex discrimination.

**6.** 36 Fed.Reg. 17319 (1971).