NATIONAL TREASURY EMPLOYEES UNION and Joseph Mackin, Appellants,

v.

Jerome KURTZ, Commissioner, et al.

No. 79–1086.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 11, 1980.

Decided May 20, 1980.

---

Murray S. Horwitz, Atty., Dept. of Justice, Washington, D. C., with whom M. Carr Ferguson, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, and Crombie J. D. Garrett, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellees.

Myron C. Baum, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for appellees.

William E. Persina, Associate Gen. Counsel, Washington, D. C., with whom Robert M. Tobias, Gen. Counsel, National Treasury Employees Union, Washington, D. C., was on brief, for appellants.

Before BAZELON, Senior Circuit Judge, TAMM, Circuit Judge, and JUNE L. GREEN,* U.S. District Judge for the District of Columbia.

Opinion for the court filed by District Judge JUNE L. GREEN.

Dissenting opinion filed by Senior Circuit Judge BAZELON.

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. The Internal Revenue Manual is the instructional handbook for inspectors of the Internal Security Division of the IRS. Section 634.32(1) requires *Miranda*-like warnings to be given to

JUNE L. GREEN, District Judge:

The issue in this case is whether the District Court held correctly that appellants' failure to exhaust their contractual remedies bars consideration of this suit. For the reasons stated below, we answer in the affirmative.

I.

Appellant Joseph Mackin, a Revenue Agent in the Internal Revenue Service (IRS) Philadelphia District Office, received a written reprimand for failing to report a bribery attempt. In response, Mr. Mackin and the appellant union, the National Treasury Employees Union (the Union) filed simultaneously a grievance and a lawsuit.

The grievance sought removal of the letter of reprimand from Mr. Mackin's personnel file, because the IRS employee who originally interrogated him tape recorded their conversation without giving any *Miranda*-like warnings or assurances allegedly required by §§ 634.32(1) and 634.5(2) of the Internal Revenue Manual.[1] The grievance alleged, *inter alia*, violation of Article 33, § 1(c) of the Multi-District Agreement (Agreement) between the IRS and the Union, which states that "No bargaining unit employer (sic) will be the subject of a disciplinary action except for reasons which will promote the efficiency of the service."

Mr. Mackin requested and the IRS agreed to waive Steps 1 and 2 of the grievance procedure. A Step 3 meeting was held between Mackin and his counsel, and the Chief of the Philadelphia District Collections Division. At this meeting, appellants argued that the IRS failed to follow its procedures and had used improper tactics by obtaining information from Mr. Mackin without issuing warnings or assurances. The IRS Chief denied the grievance, ruling that Mr. Mackin was properly given a written reprimand for failing to report an apparent bribe.

a subject or suspect (employee or non-employee) of a criminal investigation where prosecution is anticipated. Section 635.5(2) requires assurances of right to silence and non-prosecution where it has been ascertained that the employee will not be prosecuted.

No appeal was filed, although a Step 4 hearing before the District Director was available within 10 days of an adverse Step 3 decision. If Step 4 were also adverse, Mr. Mackin could have requested arbitration.

The lawsuit alleged violation of the Internal Revenue sections cited above, sought destruction of the tape from the initial interrogation, prohibition of the use of the information gleaned from the investigation in any proceeding against Mr. Mackin, and a declaratory order that the IRS should obey the regulations at issue.

Upon cross-motions for summary judgment, the District Court declared that jurisdiction existed pursuant to 28 U.S.C. § 1331 for the alleged violation of the agency regulations at issue, but that it could not be invoked properly since Mr. Mackin had failed to pursue his grievance.

## II.

■ The Agreement clearly could have provided Mr. Mackin with the relief he sought both in his grievance and lawsuit. Article 33 § 6.C states that the arbitrator's authority and jurisdiction are "confined exclusively to the validity of the disciplinary action." In our view, the word "validity" encompasses the procedural irregularity alleged here. Indeed, the appellant so argued in his grievance. Further, there is no practical difference between the relief sought in the grievance and lawsuit. While appellants sought destruction of the tape, such relief would be highly unlikely. Even in criminal cases, exclusion of tainted evidence, not destruction, is the rule. Fed.R. Crim.P. 41(f); 3 Wright and Miller, Federal Practice and Procedure § 673 (1978 Supp.).

Contractual remedies existed to afford appellant the relief he sought in court: Mr. Mackin's record could have been cleared,

and the IRS put on notice that such methods of investigation would not be tolerated.

■ The general rule requiring exhaustion of administrative remedies is applicable to labor-management disputes where the issue is subject to a contractual grievance and arbitration procedure. *Republic Steel v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). This rule applies where, as here, the issue involves alleged violations of the employer's regulations which are subject to the grievance procedure. *Weitzel v. Portney*, 548 F.2d 489 (4th Cir. 1977).[2]

Appellants' argument that the violations of the Internal Revenue Manual alleged here create a separate and independent cause of action is foreclosed by the failure to attempt exhaustion of the contractual remedies. *Weitzel v. Portney, supra*, at 493.

The decision of the District Court is *Affirmed*.

BAZELON, Senior Circuit Judge, dissenting:

On February 17, 1978, appellants filed a lawsuit and a grievance seeking relief from a reprimand for Mr. Mackin's failure to report a bribe offer. Because I believe that the district court inappropriately held that the exhaustion doctrine bars judicial consideration, I would reverse.

## I.

In an era dominated by the activities of administrative agencies, it is understandable that the courts have seen fit to require litigants to exhaust administrative remedies before seeking judicial relief.[1] The bounds of the doctrine, however, are hardly settled.[2] As a result, each case must be con-

2. Appellants' argument that the definition of "grievance" in Article 35 § 2 of the Agreement excludes remedying violations of the Internal Revenue Manual is undermined by their conduct in contesting the reprimand on these very grounds at the grievance hearing.

1. *See, e. g., McKart v. United States*, 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662–1663, 23

L.Ed.2d 194 (1969); *League of United Latin American Citizens v. Hampton*, 501 F.2d 843, 845 (D.C.Cir.1974).

2. One commentator observed that "[e]ven though courts seldom talk in terms of judicial discretion to require or not to require exhaustion, the reality often is that the determinations

sidered on its own terms in light of the considerations generating the exhaustion requirement. This requires a fuller review of the case than is apparent in the majority's opinion.

The parties do not dispute the following facts:[3] On November 16, 1977, defendant Small asked appellant Mackin to join him for coffee in the cafeteria of the Internal Revenue Service (IRS), the agency where both were employed. Over coffee, Small asked Mackin if he had ever been offered or accepted bribes.[4] The conversation, including Mackin's responses, was taped by an electronic device obtained pursuant to relevant IRS regulations.[5] Mackin was not advised that the conversation was being taped, nor that he was being investigated. Nor was he advised of his rights prior to the investigation.[6] Mackin received notice of his rights only later when he was interviewed three more times. He ultimately was given an official reprimand, lodged in his personnel file.

On February 17, 1978, Mackin and his union filed both the instant suit and a grievance pursuant to Article 35 of the "Multi-District Agreement" (MDA), the collective bargaining agreement negotiated between the IRS and the union. The agreement establishes a 4-step grievance procedure and conditions for binding arbitration.[7] Mackin sought relief under the

---

are highly discretionary." K. Davis, Administrative Law of the Seventies 446 (1976).

3. Defendants' Statement of Facts Not in Issue, *reprinted in* Joint Appendix (J.A.) at 35–39; Plaintiffs' Statement of Facts as to Which There is No Genuine Issue, J.A. 41–45. Appellants are Joseph Mackin, an IRS employee, and his bargaining unit, National Treasury Employees Union. Appellees are the IRS Commissioner and four other IRS employees.

4. An IRS employee "who has reasonable grounds for believing that an attempt to bribe him has or will be made has a duty" to immediately report the matter and submit a memorandum stating the circumstances. Internal Revenue Manual 0735.1 Section 217.3.

5. Affidavit of John H. Diez, Internal Security Division, IRS, J.A. 26–29. The relevant regulation is Internal Revenue Manual 10(111), Section 652.22 ("Consensual Non-Telephone Monitoring").

6. Internal Revenue Manual 10(111), Section 634.32(1) provides:
   Prior to any questioning of a subject or suspect of a criminal investigation, *where prosecution is anticipated* the individual (employee or non-employee) will be advised as follows: "Before we ask you any questions, it is my duty to advise you of your rights. You have the right to remain silent. Anything you say can be used against you in court, or other proceedings. You have the right to consult an attorney before making any statement or answering any question, and you may have him present with you during the questioning. You may have an attorney appointed by the U.S. Magistrate or the court to represent you if you cannot afford or otherwise obtain one. If you decide to answer questions now with or without a lawyer, you still have the right to stop the questioning at any time or to stop the questioning for the purpose of consulting a lawyer. However—you may waive ·the right to advice of counsel and your right to remain silent, and you may answer questions or make a statement without consulting a lawyer if you so desire."

   Section 634.5(2) provides:
   When it is ascertained that the employee will not be prosecuted, it will be necessary prior to questioning to advise the employee as follows: "You are here to be asked questions pertaining to your employment with the Internal Revenue Service and the duties that you perform for the IRS. You have the option to remain silent, although you may be subject to removal from your employment by the Service if you fail to answer material and relevant questions relating to the performance of your duties as an employee. You are further advised that the answers you may give to the questions propounded to you at this interview, or any information or evidence which is gained by reason of your answers, may not be used against you in a criminal prosecution for any false answer that you may give."

7. Step 1 takes place before the employee's Group Manager; step 2 is an appeal to the Branch Chief; step 3 is an appeal to the Division Chief; and step 4 is an appeal to the District Director. Multi-District Agreement (MDA), Art. 35, section 7, J.A. 165–66. Adverse decisions at step 4 can be appealed to binding arbitration under Article 36 if they "concern specific interpretations and/or applications of the terms" of the MDA. MDA, Art. 35, section 8(A), J.A. 167. Other decisions can be appealed to arbitration only for an advisory decision, and only "insofar as the subject matter of [the relevant] regulation would be negotiable." MDA, Art. 35, section 8(B), J.A. 167.

agreement's provision that "no bargaining unit employer (sic) will be the subject of a disciplinary action except for reasons which will promote the efficiency of the service" and two other provisions. [8] Mackin requested "removal of written reprimand from employee's personnel folder." As the majority recounts, Mackin failed to pursue this grievance beyond the third step. There he obtained an adverse ruling, which the division chief justified by reasoning, "I remain convinced that Mr. Mackin exercised poor judgment by not reporting an apparent bribery attempt."

In the court suit, appellants claimed that the November 16 tape-recorded interview of Mackin was obtained in violation of an Internal Revenue Manual provision. The provision requires investigators to advise a subject or suspect of his rights prior to questioning.[9] As relief, appellants asked the court to 1) enjoin the agency from using the November 16 tape-recorded interview "as the basis for discharging or otherwise disciplining Mr. Mackin"; 2) order destruction of that tape-recorded interview; 3) enjoin the agency from using any information obtained from the three subsequent interviews of Mackin; and 4) declare that the IRS agents must advise suspects of their rights before electronically monitoring or tape recording investigatory questioning.[10]

## II.

The majority asserts that the relief sought was available in either forum, and was in fact identical.[11] I cannot agree. As noted above, through the grievance procedure, appellants merely sought removal of the reprimand letter from Mackin's personnel file. The majority notes that if the grievance were pursued to arbitration, the arbitrator's authority and jurisdiction would be " 'confined exclusively to the validity of the disciplinary action.' "[12] In court, appellants sought to enjoin further use of any of the four interviews with Mackin and to compel destruction of the offending tape. Only superficially do these requests resemble the relief sought by the grievance: the ultimate aim of both is to protect Mackin from further consequences from the investigation that began without notice to him. The scope of the judicial relief concerning the materials sought in fact has broader qualities.[13] Furthermore, appellants also requested the district court to declare that warnings must be given to suspects of criminal investigations even when the investigators have duly obtained official approval for electronic monitoring. This involves construction of the simultaneous effect of two Internal Revenue official procedures for all times, not merely the validity of a particular letter of reprimand. As the procedures themselves codify Fourth Amendment requirements, the interpretative task is a legal one.

The majority argues that appellants could have obtained the same relief under the grievance procedure because "Mr. Mackin's record could have been cleared, and the IRS put on notice that such methods of investigation would not be tolerated." [14] This argument unduly shrinks the judicial claims and stretches the benefits that might arise from removal of the reprimand letter. Inadequacy of administrative relief is a well-

---

**8.** MDA, Art. 33, section 1(C), J.A. 161. Mackin's grievance also cites articles 3 and 12, which are not discussed anywhere else in the record.

**9.** *See* n.6 *supra.*

**10.** Complaint for Injunctive Relief, Civil Action 78–0284, J.A. 4–11.

**11.** Majority Op. at 413.

**12.** *Id.* at 4 (citing MDA, Art. 33, section 6(C). The relevance of this point is less certain than the majority assumes. *See* p. 416 *infra.*

**13.** The majority suggests that because it is not likely to be successful, the request for destruction of the tape can be ignored for the purposes of considering exhaustion. Majority Op. at 413. This reasoning is speculative and unhelpful. Moreover, appellants certainly could succeed in their further request that the agency be enjoined from further use of the information obtained by any of its interviews with Mackin.

**14.** Majority Op. at 413.

accepted exception to the exhaustion requirement.[15]

The majority also ignores a factual dispute unresolved in the record. Appellants disputed the ability of grievance procedure to respond to their collateral defense as the challenge to the reprimand.[16] The district court wrongly granted summary judgment in the face of this dispute, and the majority here compounds the error by taking judicial notice to resolve the issue. The majority assumes that the relevant authorization is that of the arbitrator's, but it is not clear that this grievance could ever be pursued to arbitration.[17] The scope of administrative review within the four-step grievance procedure remains ambiguous.[18] Acknowledging that the arbitrator would be restricted to considering "the validity of the disciplinary action," the majority reasons that "[i]n our view, the word 'validity' encompasses the procedural irregularity alleged here." [19] The court is wrong to draw on its view of an issue repeatedly contested by appellants. Its view cannot be defended merely on the grounds that appellants lodged the grievance.[20] The clearest evidence on the issue indicates that the "validity" of disciplinary

action is evaluated under the grievance procedure in its own narrow terms, not in light of defenses external to the grievant's own conduct. The district chief who denied the grievance explained that the reprimand was appropriate because "Mackin exercised poor judgment by not reporting an apparent bribery attempt." [21] As the breadth of the permissible inquiry under the grievance procedure remains unresolved, I dissent from this court's affirmance of the district court's summary judgment.

### III.

As an essentially prudential doctrine, the exhaustion requirement retains coherence only as long as its application advances its underlying purposes. Its application to this case fails on this score.

As has already been discussed, this is not a case in which the agency might provide the judicial relief requested,[22] and thereby eliminate the need for judicial consideration. Further, this case does not involve the "exercise of discretionary powers granted the agency by Congress." [23] Nor does it require application of the IRS's special ex-

---

**15.** *See, e. g., Wallace v. Lynn*, 507 F.2d 1186, 1190 (D.C.Cir.1974), *Ray v. Fritz*, 468 F.2d 586 (2d Cir. 1972) (per curiam). *See also* n.28 *infra*.

**16.** Plaintiffs Opposition to Defendants' Supplemental Memorandum with Respect to Issue of Failure to Pursue Contract Remedies, J.A. 138–48.

**17.** *See* n.7 *supra*, n.26 *infra*.

**18.** Section 4(a) of Article 33, MDA states that "[a]n employee against whom a disciplinary action has been finally taken may appeal the decision on any basis allowed by applicable laws and regulations." J.A. 161. This provision does not clarify whether a reprimand under one regulation may be collaterally attacked by establishing violation by the agency of another regulation. This approach, the premise of appellants' action, depends upon the possibility of an exclusionary rule in a non-criminal, administrative context—a question unsettled in the courts. In *United States v. Janis*, 428 U.S 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the Supreme Court refused to introduce the exclusionary rule in federal civil tax proceeding where the illegal search was conducted by a state law enforcement officer; the issue has

not been resolved where a federal officer conducted the search. The ability of decisionmaking under the contract grievance procedure of this case to develop the approach for an employee's grievance is not established in the record.

**19.** Majority Op. at 413.

**20.** *See id.* at 413 n.2. Appellants' mere request for relief through the grievance procedure cannot confer authority on the procedure that it may not have.

**21.** IRS Memorandum to James W. Kurtz, Union Steward, from Chief, Collection Division (March 21, 1978) (denying grievance at third step), J.A. 121.

**22.** *See* n.28 *infra*.
   The majority's reliance on *Weitzel v. Portney*, 548 F.2d 489 (4th Cir. 1977), is misguided, as that case involved a contract term, not a violation of an agency regulation.

**23.** *See McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969).

pertise or discretion.[24] Finally, the value from letting the agency, in the first instance, develop a record[25] has little bearing where, as here, judicial review arises only in a suit independent of the agency action. It is not clear whether this grievance could be appealed to binding arbitration.[26] If it could not be, judicial review might well not be available; the grievance procedure is the exclusive avenue prescribed by the Multi-District Agreement. And an arbitrated decision can be appealed only to the Federal Labor Relations Council, not the courts; such review is limited.[27] In any case, the development of facts on the agency's record would not form the basis for judicial review.

Thus, it is not surprising that exceptions to the exhaustion requirement are compelling in this case. Judicial consideration should not be barred where, as here, seeking administrative relief appears futile or unlikely to succeed,[28] or the issue is purely one of construing law,[29] not exercising administrative discretion. For the foregoing reasons, I dissent.

---

24. *See id.*

25. *See id.* The *McKart* opinion also mentioned the goal of avoiding "premature interruption of the administrative process." *Id.* at 193, 89 S.Ct. at 1662. This goal has little to recommend it, however, where the administrative process is unlikely to produce the relief sought. *E. g., Plano v. Baker*, 504 F.2d 595, 598 (2d Cir. 1974); *American Federation of Gov't Employees v. Acree,* 475 F.2d 1289, 1292 (D.C.Cir. 1973).

26. *See* n.7 *supra.* This grievance concerns application of an employer procedure; thus, arbitration would apply only if the procedure is negotiable. Appellants assert that it is not because it deals with internal security practices, deemed nonnegotiable by executive order. Plaintiffs' Opposition to Defendants' Supplemental Memorandum with Respect to Issue of Failure to Pursue Contract Remedies, J.A. 138, 147 (citing E.O. 11491, § 11(b), as amended). This was apparently ignored by the district court.

27. *See* 45 Fed.Reg. 3513–4 (Jan. 17, 1980) (to be codified at 5 C.F.R. § 2425.3) (grounds for review).

28. *See American Federation of Gov't Employees v. Acree*, 475 F.2d 1289, 1291 (D.C.Cir. 1973); *Goetz v. Ansell*, 477 F.2d 636, 637 (2d Cir. 1973). The exception of futility is a natural counterpart to the exhaustion doctrine's purpose of allowing an agency "to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972).

29. *See McGee v. United States*, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971); *McKart v. United States*, 395 U.S. 185, 197–99, 89 S.Ct. 1657, 1664–1665, 23 L.Ed.2d 194 (1969); *Consumers Union of United States v. Cost of Living Council*, Em.App., 491 F.2d 1396 (TECA), *cert. denied, sub nom. Business Roundtable v. Consumers Union of U. S., Inc.*, 416 U.S. 984, 94 S.Ct. 2387, 40 L.Ed.2d 761 (1974).