**Margaret HUNTER, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, et al. Defendants.**

**No. CIV.A. 02–0137(ESH).**

United States District Court,
District of Columbia.

March 6, 2003.

Henry E. Weil, Belli, Weil & Grozebean, P.C., Rockville, MD, for Plaintiff.

Mary Catherine Zinsner, Troutman Sanders, McLean, VA, Jennifer A. Kerkhoff, Troutman Sanders, LLP, R. Merinda Wilson, Sidley Austin Brown & Wood, Washington, DC, for Defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiff has brought suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, challenging the denial of long-term disability benefits under the employee welfare benefit plan ("Plan") that had been established and maintained by her former employer, KPMG, LLP. The long-term disability ("LTD") benefits are made available to Plan participants pursuant to a group disability income insurance policy issued by defendant Metropolitan Life Insurance Company ("MetLife").

Plaintiff argues that MetLife's denial of her LTD benefits claim constitutes a breach of the terms of the Plan (Count One) and that KPMG breached its fiduciary duty by failing to assist her in obtaining these benefits (Count Two). Plaintiff claims that the denial was arbitrary and capricious and has moved for summary judgment on this basis. Defendant Metlife has moved for summary judgment based on plaintiff's failure to exhaust administrative remedies available under the Plan before filing suit. Defendant KPMG moves for dismissal on the same basis, but also argues that it is not liable for MetLife's decisions regarding plaintiff's LTD benefits claim, and second, that even if KPMG could be legally responsible for MetLife's handling of plaintiff's claim, MetLife's actions were not arbitrary or capricious.

The Court concludes that plaintiff failed to exhaust the available administrative remedies prior to filing suit and that KPMG is not liable as a fiduciary for MetLife's determination of plaintiff's claim. Therefore, defendants' motions are granted and plaintiff's motion is denied.

## BACKGROUND

Plaintiff, Margaret Hunter, was employed by defendant KPMG in Washington, D.C. as a director in Corporate Restructuring during all relevant times. (Compl.¶ 6.) As a KPMG employee, she was eligible to participate in KPMG's employee welfare benefit plan ("Plan"), which provides for disability benefits through an insurance policy issued by MetLife. (Defendant MetLife's Brief in Support of its Motion for Summary Judgment ["ML's Br."] Ex. 1 at ML 4404.) [1]

On January 22, 2001, plaintiff was involved in a car accident which resulted in

---

1. Exhibit 1 contains portions of the claim file maintained by MetLife. Subsequent citations to this file are referenced by the Bates number assigned to each page (*i.e.*, "ML ___").

injuries that caused her to stop working for KPMG on February 28, 2001. (Compl.¶¶ 8–9.) Plaintiff received short-term disability benefits through August 27, 2001. (ML 3845.) MetLife also approved LTD benefits through September 5, 2001 (*id.* at 131–32), but withdrew plaintiff's claim after that date because her treating physician had advised KPMG that she could return to work part-time beginning September 6, 2001. (*Id.*) Since plaintiff was able to work, she was no longer eligible for LTD benefits under the Plan.[2] (*Id.*)

The letter notifying plaintiff of the withdrawal of her claim also notified plaintiff of her right to request a review of the determination. (*Id.* at 132.) On October 1, 2001, plaintiff submitted the claim for review with documentation indicating that she was not able to return to work. (*Id.* at 121.) She submitted additional documentation to support the reinstatement of her claim on October 19, 2001. (*Id.* at 100–01.) In a letter to plaintiff dated November 7, 2001, MetLife acknowledged receipt of the request for review and documents, noted that benefits could not be reinstated, and advised plaintiff that the claim had been referred for independent review. (*Id.* at 95.) The letter stated that plaintiff would be informed of a decision or of the need for additional time to review the claim within sixty days. (*Id.*) In a December 19, 2001 letter, MetLife indicated to plaintiff that additional time was needed "to complete a full and fair review." (Memorandum of Points and Authorities in Support of the

Motion of KPMG LLP to Dismiss or, in the Alternative, for Summary Judgment ["KPMG Mem."] Ex. 18a.) Plaintiff submitted further documentation in support of her claim on December 28, 2001 and January 3, 2002. (ML 364–67, 397–401.) On January 23, 2002, prior to receiving a determination on the review of its claim, plaintiff filed this suit.

On April 5, 2002, MetLife informed plaintiff that the review of her claim was complete and that it remained withdrawn as of September 6, 2001. (KPMG Mem. Ex. 22.) At that time plaintiff was also informed that she could appeal this decision within 180 days. (*Id.*) Plaintiff appealed on June 20, 2002 (ML 402), and thereafter submitted approximately four thousand pages of additional records to support the appeal. (ML's Br. at 6.) On October 11, 2002, during the course of the review process, MetLife requested that plaintiff undergo an independent medical exam (IME). (KPMG Mem. at 12–13; KPMG Mem. Ex. 23.) The Plan specifically provides MetLife with the right to request an IME and to deny benefits based on a claimant's failure to do so.[3]

Plaintiff refused to have the IME (KPMG Mem. Ex. 24), and as a result, MetLife, by letter dated November 7, 2002, upheld its original determination denying the LTD benefits claim on the grounds that plaintiff had refused to undergo the IME. (*Id.* Ex. 25.) On November 15, 2002, after receipt of this denial letter, plaintiff notified Metlife that she

---

2. In order to receive LTD benefits under the Plan, plaintiff "must be disabled as defined by the Plan: (I) for 36 months plaintiff must not be able to perform the material and substantial duties of her occupation; (ii) after 36 months plaintiff must not be able to perform the material and substantial duties of any job which she is reasonably fitted by her education, training, or experience; (iii) plaintiff is not working at any job for wage or profit unless in an approved return to work pro-gram; and (iv) plaintiff is under the regular care of a doctor." (ML's Br. at 5.)

3. The Plan states that MetLife "will have the right to have you examined at reasonable intervals by medical specialists of our choice. The examination will be at our expense. Failure to attend a medical examination or cooperate with the medical examiner may be cause for denial or suspension of your benefits." (KPMG Mem. Ex. 3 at 18.)

would submit to an IME. (*Id.* Ex. 26.) However, plaintiff refused to agree to an extension of MetLife's December 6, 2002 deadline for filing dispositive motions in this case in order to provide time to schedule and conduct the IME, prepare a report, and consider the report in furtherance of plaintiff's appeal. (*Id.* Ex. 27.) Consequently, the appeal process was prematurely curtailed and the motions currently before the Court were filed.

Both MetLife and KPMG have sought dismissal based on plaintiff's failure to exhaust administrative remedies before filing suit. KPMG has also filed a motion for summary judgment arguing that it is not liable for MetLife's decisions regarding plaintiff's LTD benefits claim and that the denial of plaintiff's LTD benefits claim was not arbitrary or capricious. Plaintiff argues that she exhausted administrative remedies because the suit was not filed until after her claim was denied on September 6, 2001 and November 7, 2001, or alternatively, administrative remedies were exhausted on November 7, 2002, when her appeal was denied for her refusal to undergo an IME. (Pl.'s Reply at 1.) She also argues that KPMG is liable as a fiduciary for MetLife's denial of her claim. Finally, although she provides no record basis for this conclusion, she moves for summary judgment arguing that the denial was arbitrary and capricious.

## LEGAL ANALYSIS

### I. ERISA's Exhaustion Requirement

█ It is well established that parties aggrieved by decisions of a pension plan administrator must exhaust the administrative remedies available to them under their pension plans before challenging those decisions in court unless "exceptional circumstances" exist.[4] *Communications Workers of America v. American Telephone and Telegraph Co.*, 40 F.3d 426, 428, 431 (D.C.Cir.1994). ERISA does not specifically require the exhaustion of remedies available under pension plans but courts have uniformly applied this requirement as a matter of judicial discretion.[5] *Id.* at 432 (citing *Committee of Blind Vendors v. District of Columbia*, 28 F.3d 130, 134 (D.C.Cir.1994) (when claim is not governed by statute requiring exhaustion, "the exhaustion doctrine applies only as a matter of judicial discretion" (internal quotation omitted))). This Circuit has clearly stated the rationale for the ERISA exhaustion requirement:

> [m]uch like the exhaustion doctrine in the context of judicial review of administrative agency action, the exhaustion re-

4. "This court has recognized a discretionary exception to the exhaustion requirement where resort to administrative remedies would be futile because of the certainty of an adverse decision." *Communications Workers*, 40 F.3d at 432 (internal quotation omitted). "The futility exception is, however, quite restricted, and has been applied only when resort to administrative remedies is clearly useless." *Id.* (internal quotation omitted). Plaintiff makes a cursory argument that any attempts to pursue her LTD claim subsequent to MetLife's November 7, 2002 denial would be futile. (Pl.'s Reply at 1.) The Court rejects this argument given the limited application of the futility exception. Plaintiff's appeal was denied on November 7, 2002 because she refused to submit to an IME. A denial on this basis does not demonstrate futility, and plaintiff fails to provide any evidence that completing the appeal process would be "clearly useless."

5. Plaintiff cites only a dissenting opinion in *National Treasury Employees Union v. Kurtz* to support of her view that the exhaustion requirement should not be imposed. (*See* Plaintiff's Plenary Memorandum of Points and Authorities in Opposition to MetLifes's Motion for Summary Judgment and KPMG LLP's Motion to Dismiss or, in the Alternative, for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment ["Pl.'s Mem."] at 5 (quoting 636 F.2d 411, 413 (D.C.Cir.1980) (Bazelon, J., dissenting)).)

quirement in the ERISA context serves several important purposes. By preventing premature judicial interference with a pension plan's decisionmaking processes, the exhaustion requirement enables plan administrators to apply their expertise and exercise their discretion to manage the plan's funds, correct errors, make considered interpretations of plan provisions, and assemble a factual record that will assist the court reviewing the administrator's actions.

*Id.* at 432.

■ It is clear here that plaintiff filed suit before exhausting the available administrative remedies. The MetLife plan provides claimants with an opportunity to appeal determinations. It states that "[i]n the event a claim has been denied in whole or in part, you ... [c]an request a review of your claim by Metropolitan. This request for review should be sent ... within 60 days after you ... received notice of the denial of the claim." [6] (KPMG Mem. Ex. 3.) Claimants requesting review are directed to state the reason they believe the claim was improperly denied and to provide any additional data that is appropriate. (*Id.*) Plaintiff exercised this right, indicating in an October 1, 2001 letter that she was not, in fact, able to return to work on September 6, even on a part-time basis (ML 121), and submitting additional information in support of her claim. (*See* ML 100–01.) Plaintiff, however, filed suit on January 23, 2002, prior to the completion

of this review process, arguing that her LTD benefits claim had already been rejected twice by this point. (Pl.'s Mem. at 6; Pl.'s Reply at 1.)

Plaintiff's argument suggests a misunderstanding of both the exhaustion requirement and the communications she received from MetLife. MetLife's notice of the termination of LTD benefits beginning on September 6 was the *initial* determination of the claim. (ML 131–32.) It does not reflect a determination based on a review and, therefore, is not sufficient to exhaust the administrative remedies provided by the Plan. Moreover, the November 7, 2001 letter from MetLife is not a rejection of the claim after completion of a review but an interim notice that LTD benefits could not be reinstated, based on the information submitted, without such a review. (*Id.* at 95.) The letter confirms that the claim was referred for an "independent review" at that time. Plaintiff was not advised of the results of this review until April 5, 2002. (*Id.* at 447–500.) Thus, the review process provided for in the Plan was not exhausted when plaintiff filed suit on January 23, 2002.[7]

■ Further, even to date plaintiff has failed to exhaust administrative remedies. Rather, she pursued an opportunity for further appeal as provided for in MetLife's April 5 letter, and as part of this appeal, she submitted 4,000 additional documents. This appeal process, however, has not been completed because plaintiff

6. MetLife appears to use the terms "review," "appeal," and "independent review" interchangeably. The Plan provides for "review" if requested by claimant within 60 days of a denial (KPMG Ex. 3), but MetLife refers to plaintiff's request for such a review as an "appeal" request (ML 95) and notes that, pursuant to this request, plaintiff's claim was referred for "independent review." (*Id.*)

7. Plaintiff suggests that it filed suit because MetLife did not respond to its request for

review within the 60·day time frame specified in the November 7, 2001 letter. (Pl.'s Mem. at 7.) That letter stated that MetLife would advise within 60 days of the decision or if an extension of time is necessary. MetLife did, in fact, notify plaintiff on December 19, 2001, that additional time was needed for the review. (KPMG Mem. Ex. 18a.) Moreover, plaintiff submitted additional documentation in support of her claim on December 28, 2001 and January 3, 2002. (ML 364–67, 397–401.)

refused to have an IME. *See supra* note 3. This amounts to a failure to exhaust. *See Zalka v. Unum Life Ins. Co. of America,* 65 F.Supp.2d 1369 (S.D.Fla.1998) (plaintiff's refusal to submit to IME after appealing insurer's denial of her benefits constitutes a failure to exhaust administrative remedies). MetLife's November 7, 2002 denial of the appeal does not amount to exhaustion because it was based on plaintiff's refusal to undergo an IME and not on a complete review of her claim. Plaintiff argues that "[t]his 'appeal' does not amount to a failure to exhaust administrative remedies" (Pl.'s Mem. at 7), but at the same time, demands that the Court review the administrative record, including the appeal and her 4,000 documents, to determine whether MetLife's denial of benefits was arbitrary and capricious.[8] (Pl.'s Mem. at 9.) Plaintiff cannot have it both ways. Plaintiff's failure to undergo an IME terminated the administrative review of her claim prematurely. Plaintiff now asks the Court to conduct a *de novo* review of the record even though plaintiff's failure to undergo an IME prevented MetLife from completing its review.[9] "[W]here as here the pension administrator has discretionary authority to construe terms of the plan and determine eligibility, it is important for the plan to provide a final, fully considered, and reasoned explanation for the court to evaluate." *Communications Workers,* 40 F.3d at 433. The Court cannot properly address plaintiff's claim because there is no "fully considered" or "reasoned" explanation to review. Such a ruling is the very type of premature judicial interference that the ERISA exhaustion requirement aims to prevent. *See id.* at 432. Consequently, defendants' motions for summary judgment and to dismiss for failure to exhaust the administrative remedies are granted.[10]

## II. Claim Against KPMG

Plaintiff argues that KPMG breached its fiduciary duty as the Plan Administrator and Plan Sponsor by failing to assist her in obtaining the LTD benefits and by conspiring with MetLife to deny her benefits. (Compl.¶ 13.) KPMG, however, is not liable as a fiduciary for MetLife's determination of plaintiff's claim. "In ERISA, Congress took a functional approach towards defining who would be treated as a fiduciary." *Brink v. DaLesio,* 496 F.Supp. 1350, 1374 (D.Md.1980), *aff'd in part, rev'd in part on other grounds,*

---

8. The parties agreed that the documents submitted to MetLife by plaintiff and referenced in plaintiff's June 20, 2002 request for appeal would be included in MetLife's administrative record for plaintiff's LTD benefits claim. *See Hunter v. Metropolitan Life Ins. Co.,* Civ. No. 02–0137, Order (D.D.C. Nov. 15, 2002).

9. It is not the Court's role to conduct a de novo review in ERISA cases where the question is whether the denial of a claim is arbitrary and capricious. Such a review is subject to the deferential "abuse of discretion" standard. *Hunter v. Metropolitan Life Ins. Co.,* Civ. No. 02–0137, 2002 WL 32072472 at *1, Memorandum Opinion (D.D.C. Aug. 9, 2002).

10. Plaintiff's claim against MetLife is dismissed without prejudice in order to allow plaintiff to exhaust the available administrative remedies. *See Communications Workers,* 40 F.3d at 434 (vacating district court's decision to excuse plaintiff's failure to exhaust administrative remedies and remanding to the district court with instructions to dismiss claim without prejudice in order to allow appellees to exhaust Plan remedies.) This is not a situation comparable to the case cited by KPMG (*see* KPMG Mem. at 15) where the opportunity for pursuing administrative remedies has been foreclosed, and thus, dismissal with prejudice was appropriate. *See Counts v. Am. Gen. Life and Accident Ins. Co.,* 111 F.3d 105 (11th Cir.1997) (affirming dismissal of lawsuit seeking judicial review of denial of disability benefits because plaintiff failed to appeal initial denial within 60 days of receiving termination letter as required by the plan.)

667 F.2d 420 (4th Cir.1981). Under the statute "a person is a fiduciary ... to the extent ... he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or ... has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). A benefit plan may provide for a named fiduciary such as a plan administrator or plan sponsor "to designate persons other than named fiduciary to carry out fiduciary responsibilities ... under the plan." 29 U.S.C. § 1105(c)(1). If a "person is designated to carry out any such responsibility, then such named fiduciary shall not be liable for an act or omission of such person in carrying out such responsibility" except in certain limited circumstances that are inapplicable here. 29 U.S.C. § 1105(c)(2).

In this case, MetLife is designated to interpret the Plan and make benefit determinations. The Plan explicitly provides that "MetLife in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract ... includ[ing] the Group Policy, Certificate and any Amendment." (KPMG Mem. Ex. 3 at ii.) Moreover, this Court previously found that "it is undisputed that the Plan gives to MetLife discretionary authority to determine a claimant's entitlement to benefits." *Hunter v. Metropolitan Life Ins. Co.,* Civ. No. 02–0137, 2002 WL 32072472 at *1, Memorandum Opinion (D.D.C. Aug. 9, 2002). Further, in contrast to the cases cited by plaintiff supporting a liberal definition of a fiduciary, there is no indication in the record that KPMG had any discretion or played any role in the determination of plaintiff's claim. *See Eaton v.*

*D'Amato,* 581 F.Supp. 743 (D.D.C.1980) (plan administrator that provided a range of administrative and management services involving discretion was a fiduciary); *Brink,* 496 F.Supp. at 1374–75 (insurance broker for union benefit plan who exercised discretionary authority over funds was a fiduciary for purposes of ERISA). Since KPMG did not function as a fiduciary and there is no indication that it played any role in the denial of plaintiff's LTD benefits claim, it cannot be held liable for MetLife's decisions as a fiduciary. Consequently, KPMG's motion for summary judgment on this basis is granted and the claim against KPMG is dismissed with prejudice.

### CONCLUSION

For the reasons discussed above, the Court finds that plaintiff failed to exhaust administrative remedies before filing this suit, and that KPMG is not liable to plaintiff for MetLife's determinations regarding her LTD claim. As a result, defendants' motions with respect to exhaustion are granted. Plaintiff's claim against MetLife (Count One) is dismissed without prejudice and plaintiff's claim against KPMG (Count Two) is dismissed with prejudice. A separate Order accompanies this Memorandum Opinion.

### ORDER

This matter is before the Court on Plaintiff's Cross Motion for Summary Judgment [29–1], Motion of KPMG LLP to Dismiss [28–1] or, in the Alternative, for Summary Judgment [28–2], and MetLife Defendant's Motion for Summary Judgment [27–1]. Based on the pleadings, the entire record and relevant case law, it is hereby

**ORDERED** that defendant MetLife's motion for summary judgment is **GRANTED**; it is

114

**FURTHER ORDERED** that defendant KPMG's motion to dismiss is **GRANTED**; it is

**FURTHER ORDERED** that defendant KPMG's motion for summary judgment is **GRANTED IN PART** with respect to KPMG's liability to plaintiff; it is

**FURTHER ORDERED** that plaintiff's cross motion is **DENIED**; it is

**FURTHER ORDERED** that Count One of the Amended Complaint is **DISMISSED WITHOUT PREJUDICE**; and it is

**FURTHER ORDERED** that Count Two of the Amended Complaint is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.